UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NARAYANAN APPUKKUTTA,               :

                      Petitioner,     :      09 Civ. 6822 (PGG) (DF)

         -against-             :      **REPORT AND**
                                              **RECOMMENDATION**

M. RUSSELL, Parole Officer,       :

                      Respondent.    :
------------------------------------------------------------X

**TO THE HONORABLE PAUL G. GARDEPHE, U.S.D.J:**

     *Pro se* petitioner Narayanan Appukkutta ("Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254, following his 2007 conviction in New York State Supreme Court, New York County. Upon a plea made pursuant to *North Carolina v. Alford*, 400 U.S. 25, 25-26 (1970), Petitioner was convicted of Attempted Rape in the First Degree, in violation of N.Y. Penal Law §§ 110.00/130.35[1], and Unauthorized Practice of a Profession, in violation of N.Y. Educ. Law § 6512[1]. Petitioner was sentenced to concurrent prison terms of five years on the attempted-rape count and one-to-three years on the unauthorized-practice count, together with three years of post-release supervision. Petitioner has now completed both his prison sentence and supervised release.[1]

---

       [1] The fact that Petitioner is no longer in custody does not moot his Petition, as he filed his Petition while he was still on supervised release, *see Eismann v. Herbert*, 401 F.3d 102, 105 n.1 (2d Cir. 2005); *see also Valentine v. New York*, 252 Fed. App'x 388, 389 n.1 (2d Cir. 2007), and as he still stands to suffer "collateral consequences" from his conviction, *see Carafas v. LaVallee*, 391 U.S. 234 (1968); *see also Sibron v. New York*, 392 U.S. 40 (1968). Continuing collateral consequences are generally presumed to exist where, as here, Petitioner is challenging his underlying conviction. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998) (citing *Sibron*, 392 U.S. at 55-56).

Petitioner primarily challenges his conviction on the ground that his guilty plea was accepted despite his protestations of innocence and the lack of a factual basis for the plea.  For the reasons set forth below, I recommend that Petitioner's claims be dismissed.

## BACKGROUND

### A.   Factual Background

Based on information provided by the prosecution during Petitioner's plea proceedings, a woman, whom this Court will identify only by the initials "R.R." for privacy reasons,[2] went to Petitioner's apartment, located at 215 West 145th Street, New York, New York, on the morning of May 31, 2002.  (*See* Declaration [of Alyson Gill] in Opposition to the Amended Petition for a Write of Habeas Corpus, dated Apr. 19, 2010 ("Gill Decl.") (Dkt. 11), Ex. A (Transcript of plea proceedings, conducted Oct. 7, 2001 ("Plea Tr.")), at 3.)  Petitioner told R.R. that he needed someone to clean the apartment, which R.R. observed to be set up as a doctor's office.  (*See id.*, at 3-4.)  In particular, R.R. observed the apartment to have a waiting area, surgical tools, pill bottles, and other medical equipment.  (*See id.*, at 3-4.)  R.R. proceeded to clean Petitioner's apartment, and Petitioner paid her for her work.  (*See id.*)  Afterwards, however, while R.R. was still in the apartment, Petitioner grabbed her breasts from behind.  (*See id.*, at 4.)  While struggling with Petitioner, R.R. "heard him unzip his pants and tell her he wanted to put it inside her." (*Id.*)  R.R. managed to free herself from Petitioner's grip and to leave the apartment.  (*See id.*)  She then immediately called the police from a public telephone outside Petitioner's apartment building.  (*See id.*)  After that, she called her mother, who, in turn, dialed 911 and reported that a man had tried to rape her daughter.  (*See id.*)

---

[2] *See* New York Civil Rights Law § 50-b.

2

The police then executed a search warrant on Petitioner's apartment, finding surgical tools and other medical equipment.  (*See id*.)  The police also videotaped the interior of the apartment, and that tape showed R.R.'s description of the apartment to have been accurate.  (*See id*.)  Although the apartment was set up like a doctor's office, Petitioner did not have a license to practice medicine.  (*See id.*, at 6.)

Petitioner was arrested on June 2, 2002.  (*See* Respondent's Memorandum of Law in Opposition to the Amended Petition for a Writ of Habeas Corpus, dated Apr. 19, 2011 ("Resp. Mem.") (Dkt. 10), at 2.)  He was charged with Attempted Rape in the First Degree, Sexual Abuse in the First Degree, and Unauthorized Practice of a Profession. (*See* Gill Decl., at Ex. C (Brief for Defendant-Appellant, dated Sept. 2008 ("Pet. App. Mem.")), at 1.)

The prosecution also informed the trial court that, in October of 2002, while Petitioner was released on bail, a second woman came forward, stating that she had also gone to Petitioner's apartment "for the purpose of working for a person she believed to be a doctor," that she had observed Petitioner wearing a white lab coat, and that Petitioner had told her that she could not disclose what he did "because he engaged in . . . performing illegal abortions."  (Plea Tr., at 5.)  Inside Petitioner's apartment, this woman observed two women in the waiting area, one of whom appeared to be pregnant.  (*See id.*)  She left Petitioner's apartment and immediately called the police.  (*See id.*)  Police re-arrested Petitioner on October 30, 2002, charging him with a second count of Unauthorized Practice of a Profession.  (*See* Resp. Mem.)

**B.     Procedural History**

Petitioner was initially found to be unfit to assist in his own defense, and was admitted to the Kirby Psychiatric Center ("Kirby").  (*See* Pet. App. Mem., at 2.)  Petitioner remained there

almost five years – until October 3, 2007, when he was finally found fit to stand trial and assist in his own defense.  (*See id.*)

### 1.   Petitioner's Guilty Plea

On October 4, 2007, Petitioner and his attorney appeared before the Honorable Gregory Carro, of the Supreme Court of the State of New York, County of New York, for plea proceedings.  (*See generally* Plea Tr.)  The court first confirmed that Petitioner had been found fit to stand trial.  (*See id*., at 2.)  Then Petitioner, through counsel, agreed to enter a so-called *Alford* or *Serrano* guilty plea[3] to one count of Attempted Rape in the First Degree and one count of Unauthorized Practice of a Profession.  (*See id*., at 3.)

The court asked the prosecutor to describe the People's proof that would be presented, if the case were to go to trial.  (*See id*.)  The prosecutor laid out R.R.'s account of what she had seen and experienced in Petitioner's apartment, when she went there to clean the apartment. (*Id.*)  The prosecutor told the court that R.R. had observed Petitioner's apartment to be set up as "a doctor's office," with an "examining table[,] . . . pill bottles, surgical tools, and needles" (*id*., at 3-4), and explained how, according to R.R., Petitioner had "grabbed [her] breasts from behind," unzipped his pants, and threatened her.  (*Id*., at 4.)  When Petitioner interrupted the prosecutor's description by saying, "excuse me, there were no patients," his counsel instructed him not to make any further comments.  (*Id.*, at 6.)

Following the prosecution's recitation of the evidence against Petitioner, Petitioner's counsel stated that he had received the police reports, 911 tapes and videotapes from the prosecution, and that he had discussed with his client that the evidence would "serve the strength

---

[3] By entering an *Alford* or *Serrano* plea, a defendant may plead guilty to a charge without admitting the underlying facts.  *See Alford*, 400 U.S. at 25-26; *People v. Serrano*, 258 N.Y.S.2d 386 (1965).

4

of the People's case." (*Id.*, at 7.)  Petitioner's counsel specifically explained that he was making

these statements because . . . there is an agreement here that the plea will be entered under the

so-called *Alford* or *Serrano* plea agreement." (*Id.*)  Petitioner's counsel also stated that, after

"numerous discussions," Petitioner had steadfastly maintained that "(a) there were no patients,

and (b) he never sexually or attempted sexually to assault anyone" (Plea Tr., at 7), even though

these contentions "[were] in clear contradiction of what the evidence shows" (*id.*).  Petitioner's

counsel noted that, although Petitioner was fit to stand trial, he had spent the last two years at

Kirby, and, in counsel's view, "it [was] reasonably inferable that [Petitioner's] denials [were]

directly related to [Petitioner's] mental condition." (*Id.*)

      The court, stating that it wanted "to make sure [Petitioner] understood the proceedings"

(*id.*, at 9), advised Petitioner that he "faced fifteen years if convicted," but that the

"recommended sentence on this plea [was] five years," which was roughly equivalent to the time

Petitioner had spent at Kirby (*id.*).  The court also informed Petitioner that, under the plea deal,

Petitioner would serve three years post-release supervision and be required to register as a sex

offender.  (*See id.*)  When the court asked Petitioner if he understood, Petitioner responded,

"Yes, your honor." (*Id.*)  In particular, Petitioner confirmed for the court that he understood that

he was waiving his right to trial and a jury, and that no one had forced him to take the plea or

had promised him anything for pleading guilty, other than a reduced sentence.  (*See id.*, at 11.)

Petitioner also signed a waiver of his right to appeal, after informing the court that he had

previously discussed the waiver with his counsel.  (*See id.*, at 11-12.)

      Petitioner then entered a plea of "guilty" to one count of Attempted Rape in the First

Degree, and one count of Unauthorized Practice of a Profession.  (*See id*., at 12.)

## 2.      **The Sentencing Proceedings**

On October 19, 2007, Petitioner and his attorney appeared in front of Justice Carro for sentencing.  (*See* Gill Decl., Ex. C (Transcript of sentencing proceedings, conducted Oct. 19, 2007), at 2.)  As promised, Justice Carro sentenced Petitioner to a prison term of five years (more specifically, concurrent terms of five years for Attempted Rape, and one-to-three years for Unauthorized Practice of a Profession), to be followed by three years of post-release supervision. (*See id.*, at 4.)

Petitioner apparently received credit towards his sentence for the period of time that he was held at Kirby.  (*See* Plea Tr., at 4.)  According to records of the New York State Department of Correctional Services, Petitioner was released from prison on December 27, 2007, and completed post-release supervision no later than October 24, 2010.  (*See* http://nysdocslookup.docs.state.ny.us.)[4]  Based on one of his latest submissions to this Court, it is the Court's understanding that Petitioner currently resides at the Wards Island Men's Shelter, in Manhattan.  (*See* Dkt. 25 (Petitioner's application for the Court to request *pro bono* counsel for him[5]).)

## 3.      **Direct Appeal**

Petitioner appealed his sentence to the Appellate Division, First Department, arguing that (1) his plea should be vacated because, although his obligations to pay a mandatory surcharge

---

[4]  On its website, the New York Department of Corrections and Community Supervision mistakenly lists Petitioner's last name as "Narayanan" and his first name as "Appukkutta."  (*See* http://nysdocslookup.docs.state.ny.us.)

[5]  By separate Order of this date, this Court is denying Petitioner's counsel application, the fourth in a series of such requests made by Petitioner and denied by the Court.  (*See* Dkts. 3, 15, 17, 25.)

and crime victim assistance fee were direct consequences of his plea, the court did not inform

him of those fees during the plea proceedings (*see* Pet. App. Mem., at 7-11), and (2) his three-

year period of post-release supervision was excessive and should be reduced (*id.*, at 11-17).

On April 28, 2009, the Appellate Division unanimously affirmed Petitioner's conviction

and sentence, without opinion.  *See People v. Appukkutta*, 878 N.Y.S.2d 926 (1st Dep't 2009).

In a letter dated May 1, 2009, Petitioner, through counsel, then sought leave to appeal to the New

York Court of Appeals on the same grounds raised to the Appellate Division.  (*See* Gill Decl.,

Ex. F (Letter to Hon. Jonathan Lippman, from Robert S. Dean, Esq., dated May 1, 2009).)  On

June 23, 2009, the Court of Appeals denied Petitioner's application.  (*See* Gill Decl. at Ex. G

(Certificate Denying Leave, dated June 23, 2009).)

### 4.      Petitioner's Collateral Motion To Vacate the Conviction

On June 11, 2009, Petitioner filed a collateral motion before the trial court, seeking an

order vacating his plea pursuant to Section 440.10(1)(h) of the New York Criminal Procedure

Law.  In his Section 440.10 motion, Petitioner argued that he was innocent and that he should be

permitted to withdraw his guilty plea because (a) it was "not voluntarily, not knowingly[,] that

[he] had accepted and signed [the plea]," and (b) at the time of his guilty plea, his counsel had

"misadvised" him, and "the judge forced [him] to sign."  (Gill Decl., Ex. H (Affidavit [of

Petitioner in Support of Article 440 Post Judgment Motion], dated June 11, 2009).)

In opposition to Petitioner's motion, the People argued that the motion was procedurally

barred because Petitioner had failed to raise his claims on direct appeal, and, alternatively, that

Petitioner's plea should be upheld as knowing and voluntary.  (*See generally* Gill Decl., Ex. I

(Memorandum of Law [in Opposition to Petitioner's Section 440 Motion], dated July 14, 2009).)

On September 15, 2009, the trial court denied Petitioner's motion to vacate his conviction. (*See* Gill Decl., Ex. J (Decision and Order, dated Sept. 15, 2009 ("9/15/09 Decision")).)  In so doing, the court found that "[t]he transcript of the plea proceeding demonstrate[d] that the plea was the product of a voluntary rational choice:  the probability of immediate release from custody was the compelling factor in the defendant's decision to plead guilty." (*Id.*, at 3.)  The court further found that "[t]he plea record also contains strong evidence of actual guilt" (*id.*, at 4), and concluded that Petitioner had "not demonstrated that he [was] entitled to a hearing," given that his claim that his counsel "misadvised [him] to plead guilty [was] conclusively refuted by the record of the plea proceedings and other official records" (*id.*, at 5).

In addition, the court noted that the defendant was "not required to admit his guilt," because "[p]rotestations of innocence do not preclude a court from accepting an *Alford* plea." (*Id.*, at 5 (citing *People v. Stewart*, 616 N.Y.S.2d 249 (3d Dep't 2003).)  Finally, the court found that "the minutes of the plea proceedings show the court recited the rights [Petitioner] was forfeiting by pleading guilty," and that the court had questioned Petitioner about his waiver of the right to appeal and had ensured that he understood the proceedings.  (*Id.*)

On October 8, 2009, Petitioner sought leave to appeal from the trial court's denial of his Section 440.10 motion.  (*See* Gill Decl., Ex.  K (Motion to appeal denial of section 440 motion, dated Oct. 8, 2009).)  The First Department denied his application on November 23, 2009.  (*See* Gill Decl., Ex. M (Certificate Denying Leave, dated Nov. 23, 2009 ("11/23/09 Certificate")).)  Petitioner then sought leave to appeal to the Court of Appeals, but that application was dismissed on the ground that the order sought to be appealed was not appealable.  (*See* Gill Decl., Ex. O (Certificate Dismissing Application, dated Jan. 10, 2010 ("1/10/10 Certificate")).)

5.     **Habeas Petition**

Petitioner filed a timely Petition for a writ of habeas corpus on August 8, 2009,[6] naming

the "New York Supreme Court" as the sole respondent.  (*See* Petition under 28 U.S.C. § 2254 for

Writ of Habeas Corpus by a Person in State Custody, dated July 13, 2009 (Dkt. 2).)  On

November 11, 2009, Petitioner then filed an Amended Petition, substituting "Mr. M. Russell," a

parole officer, as respondent.  (*See* Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas

Corpus by a Person in State Custody, dated Nov. 11, 2009 ("Am. Pet.") (Dkt. 5).)  In support of

his Amended Petition, Plaintiff also submitted a packet of materials, including, among other

writings, three sworn affidavits providing additional details about Plaintiff's alleged version of

events.  (*See* Affidavits of Petitioner, sworn to Apr. 28, 2010, Apr. 30, 2010, and May 5, 2010

(collectively, "Pet. Aff.") (all Dkt. 12).)[7]  In his various submissions, Petitioner claims that he is

innocent of the charges that were brought against him (*see generally* Am. Pet.) and that the

prosecution's case against him was false and constituted a "violation of [his] civil and

constitutional fundamental rights" (Pet. Aff., at 1).

_____

    [6]  Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas
petition is timely when it is filed within one year of the date when the petitioner's conviction
became final.  Here, Petitioner's conviction became final on September 21, 2009, which was 90
days after the Court of Appeals denied him leave to appeal (*i.e.,* the expiration of his time to
petition for certiorari).  *See Williams v. Artuz*, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment
becomes "final" for purposes of Section 2244 upon "the completion of direct appellate review in
the state court system and either the completion of certiorari proceedings in the United States
Supreme Court, or – if the prisoner elects not to file a petition for certiorari – [the expiration of]
the time to seek direct review via certiorari" (citations omitted)).  As Petitioner filed his habeas
petition within one year of that date, his petition is timely.  (*See* Resp. Mem. at 10 (conceding
that Petitioner's claim is timely).)

    [7]  Petitioner submitted these three affidavits as one document numbering the entire set in
one sequence.  (*See* Pet. Aff.)

Specifically, Petitioner contends that "there was no[] evidence and there was no witness" demonstrating that a crime had occurred, and he further contends that witnesses fabricated the police reports against him.  (Am. Pet., ¶ 13.)  Petitioner denies raping R.R. (*see* Am. Pet., ¶ 10(e) (recounting argument made on direct appeal))[8] and claims that, in retaliation for a dispute arising from the payment of fees for cleaning services, R.R. filed a false report against him alleging sexual assault and the unlawful practice of medicine (*see* Am. Pet., ¶ 13).  According to the Amended Petition, Petitioner's neighbors had printed "homeopathy notices" and placed them on his property, and R.R. used those notices when she falsely reported to police that Petitioner was practicing medicine without a license.  (*See id.*)

Petitioner further contends that the second witness who alerted police to Petitioner's unlawful practice of medicine was R.R.'s relative, and that this witness also used one of the notices printed by Petitioner's neighbors to file a false report against Petitioner.  (*See* Pet. Aff., at 2.)  Petitioner denies engaging in the unlawful practice of medicine and contends that the medical supplies and equipment found at the apartment were not used for such a purpose.  (*See id.*, at 3 (stating, *inter alia,* "The table inside my room was a dining table, it was not a clinical table.  I am always using the white color shirt.  It was not a doctor's type of shirt.  The needles I was keeping [were] for my own use because I am [a] diabetic patient.").)  According to Petitioner, Petitioner's apartment contained "no patient[s], no prescription[s], and no medicine." (*See id.*; *see also* Am. Pet., ¶ 13.)

Petitioner also argues that he did not enter his guilty plea knowingly and voluntarily. According to one of Petitioner's written submissions to this Court, he did not "understand the

_____

[8] Petitioner was never charged with rape, but rather with Attempted Rape in the First Degree, Sexual Abuse in the First Degree, and Unauthorized Practice of a Profession.  (*See* Pet. App. Mem.)

conviction while [he] was in custody . . . [and] did not understand what the judge told [him]." (Pet. Aff., at 4.)  Indeed, Petitioner contends that "[t]ruly [he] did not wish the *Alford* plea of guilty."  (*Id.*)  He asserts that his trial counsel falsely "informed the court that [Petitioner] had wished to enter an *Alford* plea of guilty in full satisfaction of both indictments" and "compelled [Petitioner] to accept the crime" and to cease his protestations of innocence before the trial judge.  (*Id.*)[9]  Thus, Petitioner claims that "[t]he consent [he] gave in [the] lower court [for the plea] [was] not true consent."  (Am. Pet., ¶ 6; *see also* Pet. Aff., at 4 (stating that "[t]he acceptance of my guilt while I was in custody is not true acceptance . . . [and] was due to coercion").)

Respondent opposes the Amended Petition, arguing that Petitioner's plea was valid, despite Petitioner's protestations of innocence, because Petitioner voluntarily and intelligently agreed to the plea deal (*see* Resp. Mem., at 14-16) and because sufficient evidence against Petitioner existed for to support a conviction (*see id.*, at 16-18).

## DISCUSSION

## I.   APPLICABLE LEGAL STANDARDS

### A.   Exhaustion

A federal court may not consider a petition for a writ of habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *see also Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997).  To satisfy the exhaustion requirement, a habeas petitioner must have "fairly presented" his claims to the state courts, thereby affording those courts the "'opportunity to pass upon and correct' alleged

---

[9] While Petitioner argued in his Section 440.10 motion that he was also coerced into the plea by the trial court (*see supra* at Point 4), he does not appear to make such an argument before this Court (*see* Am. Pet., ¶ 13; *see generally* Pet. Aff.).

violations of . . . prisoners' federal rights." *Picard*, 404 U.S. at 275 (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)).  Once the state courts are apprised of the constitutional nature of a petitioner's claims, the exhaustion requirement is fulfilled when those claims have been presented "to the highest court of the state."  *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (citation omitted).

In this habeas proceeding, Petitioner essentially argues that his plea is invalid because his plea was not knowingly and voluntarily made, and because he was innocent and there was a lack of a factual basis for his plea.  Petitioner has exhausted this claim by raising it in his Section 440.10 motion to vacate his conviction, and by then seeking leave to appeal the trial court's denial of the claim to the Appellate Division.

B.    **Standard of Review**

Under AEDPA, this Court must accord substantial deference to state court decisions. Section 2254(d) provides, in relevant part, that a court may grant a writ of *habeas corpus* on a claim that has been previously adjudicated on the merits by a state court only if the state-court adjudication:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *see also Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) (noting that "adjudicated on the merits" means "a decision finally resolving the parties' claims,

with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground").

Under Section 2254(d)(1), a state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision," and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law pursuant to this provision occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 73-76 (2003). The state court's decision, however, "must have been more than incorrect or erroneous" – rather, "[t]he state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (quoting *Williams*, 529 U.S. at 409). In other words, the state court's ruling must have been "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011).

In addition, under AEDPA, where not manifestly unreasonable, a state court's factual findings are presumed correct, and can only be overcome by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II.   PETITIONER'S CLAIM

As discussed above, Petitioner principally asserts in his Amended Petition that he is innocent of the crimes of which he was convicted, suggesting that, because of his protestations of innocence, his plea should not have been accepted by the trial judge. He also argues, in his

13

accompanying submissions, that his plea was not knowing, voluntary and intelligent because he did not understand his rights, because he was coerced into entering a guilty plea by counsel, and because there was no evidentiary support for his conviction.  (*See* Pet. Aff., at 4.)  The state trial court denied Petitioner's challenge to his plea as without merit, and the Appellate Division denied Petitioner leave to appeal from that decision, rendering the trial court's decision the last-reasoned state court decision in the record.  (*See* 9/15/09 Decision; 11/23/09 Certificate; 1/10/10 Certificate.)  Because that decision was an adjudication on the merits of Petitioner's claim, this Court must review the claim under AEDPA.  *See Garcia v. Portuondo*, 104 Fed. App'x 776, 779 (2d Cir. Jul. 19, 2004).

        To determine the validity of a guilty plea, a court must always ask "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."  *Alford*, 400 U.S. at 31.  "The question [of] whether a guilty plea has been knowingly and voluntarily entered is a mixed question of law and fact."  *Bey v. Bailey*, No. 09 Civ. 8416, 2010 WL 1531172, at *4 (S.D.N.Y. Apr. 15, 2010) (citing *Matusiak v. Kelly*, 786 F.2d 536, 543 (2d Cir. 1986)).  "For the plea to be voluntary, '[i]t is axiomatic' that the defendant must at least be competent to proceed." *Matusiak*, 786 F.2d at 543 (quoting *United States v. Masthers*, 539 F.2d 721, 725 (D.C. Cir. 1976)).  To be deemed competent, a defendant must possess "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding," as well as (2) "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960) (internal quotation marks and citation omitted); *see also United States v. Lyttle*, 455 Fed. App'x 61, 64 (2d Cir. 2012).  A state court's competency determination is a factual issue that is entitled to a presumption of correctness on habeas review.  *See Demosthenes v. Baal*, 495 U.S. 731, 735, (1990); 28 U.S.C.

14

§ 2254(e)(1).  "The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

As for whether the trial court may accept a guilty plea from a defendant who maintains his innocence, the Supreme Court has made clear that "[a]n accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when . . . he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt."  *Alford*, 400 U.S. at 25-26.   In *Alford*, the defendant "was indicted for first-degree murder, a capital offense under North Carolina law."  *Alford*, 400 U.S. at 26-27.  The defendant was "[f]aced with strong evidence of guilt and no substantial evidentiary support for [his] claim of innocence," and, after consultation with his counsel, he decided to plead guilty to second-degree murder in exchange for a prison sentence.  *Id.* at 27.  The Supreme Court found the defendant's guilty plea to have been valid, even though the defendant "testified that he had not committed the murder but that he was pleading guilty because he faced the threat of the death penalty if he did not do so."  *Id.* at 28.  In reaching this conclusion, the Court noted that the fact that a defendant "would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose advice was that the plea would be to the defendant's advantage."  *Id.* at 31.[10]

---

[10]  Although states may require their courts to refuse guilty pleas entered by defendants who protest their innocence, the federal Constitution does not mandate such a refusal.  *Alford*, 400 U.S. at 38 n.11.

15

Here, Petitioner argues that his plea was neither knowing nor voluntary, and that the evidence of his guilt was insufficient to justify the trial court's acceptance of an *Alford* plea in his case.  This Court considers each of Petitioner's contentions in turn.

### A.      Alleged Lack of Knowledge

Petitioner challenges his plea on the ground that it was not knowing and intelligent.  (*See* Pet. Aff., at 4.)  On this point, Petitioner contends, *inter alia,* that he did not "understand what the judge told [him]."  (Pet. Aff., at 4.)  For this and other reasons, Petitioner argues that he did not give "true consent" for the plea.  (Am. Pet., ¶ 6.)

In determining whether a particular guilty plea was made "knowingly" and "intelligently," a court should consider whether, at the time of the plea, the trial judge sought to ensure that the defendant was not incompetent or "otherwise not in control of [his or her] mental faculties."  *Brady*, 397 U.S. at 756.  The court should also assess whether the defendant "was advised by competent counsel (and) . . . made aware of the nature of the charge against [him or her]," *id.* at 756, and was "fully aware of the direct consequences" of the plea, *id.* at 755 (internal quotation marks and citation omitted); *see also Henderson v. Morgan*, 426 U.S. 637, 643 (1976) (holding that for a guilty plea to be valid, a defendant must receive full notice of the charges against him).  In the absence of evidence to the contrary, a defendant "must be presumed to have been informed, either by his lawyers or at one of the pre-sentencing proceedings, of the charges on which he was indicted."  *Marshall v. Lonberger*, 459 U.S. 422, 437 (1983); *see also Panuccio v. Kelly*, 927 F.2d 106, 111 (2d Cir. 1991) ("trial court could . . . appropriately assume that [defendant] understood the charges against him since he was represented by counsel who had presumably explained the charges to him").

16

In this instance, the transcript of the plea allocution demonstrates that Petitioner's claim that his plea was not knowing or intelligent lacks merit.  During the plea proceedings, the trial court first confirmed that Petitioner was found fit to stand trial (*see* Plea Tr., at 2) and sought "to make sure [Petitioner] understood the proceedings" (*id.*, at 9).  The trial court particularly advised Petitioner of the sentence he could face if convicted at trial, and of the reduced sentence he would receive upon a plea.  (*See id.*)  The trial court further advised Petitioner that, under the plea bargain, he would need to serve a specified term of post-release supervision and would also be required to register as a sex offender.  (*See id*.)  When the trial court asked if Petitioner understood the maximum sentence he would face at trial, as compared to the sentence he would face upon a plea, Petitioner responded, "Yes, your honor."  (*Id.*)  Petitioner further confirmed for the court that he understood that he was waiving his right to a trial by jury.  (*Id.*, at 11.)  In addition, before signing a waiver of his right to appeal, Petitioner confirmed that he had discussed the waiver of that right with his trial counsel.  (*Id*., at 12.)

Even apart from the presumption of correctness that AEDPA accords to the state court's factual findings regarding the knowing and voluntary nature of a plea, *see Rashid v. Kuhlman*, No. 97 Civ. 3037 (RCC) (HBP), 2000 WL 1855114, at *16 (S.D.N.Y. Dec. 19, 2000) (holding that, where the state court "found that petitioner's plea was knowing and voluntary[,] . . . [s]uch a factual finding is presumptively correct . . . and can be overcome only by clear and convincing evidence"); 28 U.S.C. § 2254(e)(1), statements made by a defendant during the course of plea proceedings are themselves entitled to a "a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), *accord United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001) (testimony at allocution carries a "strong presumption of accuracy," which allows a court to discredit later self-serving statements, "absent a substantial reason to find otherwise");

*Adames v. United States*, 171 F.3d 728, 732 (2d Cir.1999) (statements at a defendant's guilty plea allocution "carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them") (citations and internal quotation marks omitted).

Here, Petitioner has offered no evidence to rebut the presumption that he understood the consequences of his plea, as he stated during the plea proceedings.  There is simply no reason to doubt, in this case, that Petitioner was properly advised by counsel, was aware of the charges against him, and fully understood the consequences of his plea.  *See Brady*, 397 U.S. at 755; *Henderson*, 426 U.S. at 643.

### B.    Alleged Coercion

Petitioner also argues that his plea was not "voluntary" because his trial counsel purportedly coerced him into accepting the proffered plea agreement.  (*See* Pet. Aff., at 4 (alleging that counsel "compelled [Petitioner] to accept the crime" and stating:  "The acceptance of my guilt . . . was due to coercion").)

A guilty plea is "voluntary" when it is "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel" and is not "induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business."  *Brady v. United States*, 397 U.S. 742, 755 (1970) (internal quotation marks and citation omitted).  A court can determine voluntariness "only by considering all of the relevant circumstances surrounding it."  *Id.* at 749.

18

As noted above, pleading guilty to avoid a more severe sentence does not, in itself, qualify as "involuntary" because the plea can nonetheless be the "product of a free and rational choice," especially where the defendant has received the advice of competent counsel. *Alford*, 400 U.S. at 31; *see also Rosado v. Civiletti*, 621 F.2d 1179, 1191 (2d Cir. 1980) (stating that, in *Alford*, "the Court emphasized that the 'voluntariness' of a guilty plea is determined by considering, not whether the defendant's decision reflected a wholly unrestrained will, but rather whether it constituted a deliberate, intelligent choice between available alternatives"). In particular, strong advice from counsel to accept a plea, when the state has substantial evidence of guilt, does not rise to the level of coercion that would render such a plea involuntary. *See Meachem v. Keane*, 899 F. Supp. 1130, 1141 (S.D.N.Y. 1995); *see also Gunn v. Kuhlman*, 479 F. Supp. 338, 343 (S.D.N.Y. 1979) ("the fact that counsel, upon a realistic appraisal of the situation, may have strongly impressed his view upon the petitioner is not itself improper, in the absence of any showing that [defendant's] will was overborne"); *France v. Strack*, No. 99–CV–2510(JG), 2001 WL 135744, at *3 (E.D.N.Y. Jan. 30, 2001) (stating that "strong advice from counsel does not amount to the kind of coercion that renders a plea involuntary when the state has considerable evidence of guilt").

Petitioner's current assertion that he was improperly pressured by his attorney to plead guilty is belied by his assurance to the trial court, at the time of his plea, that no one had forced him to enter the plea. (*See* Plea. Tr. at 11 (indicating that in respond to the trial court asking whether "anyone [had] forced [Petitioner] to enter this plea," Petitioner answered: "No. No.").) Once again, such a statement during a plea allocution carries a strong presumption of veracity. *Blackledge*, 431 U.S. at 74. Petitioner bears the burden of rebutting that presumption, and, in this case, he has not done so.

19

Indeed, in his Section 440 motion, as here, Petitioner offered no evidence to demonstrate

that, notwithstanding his statement at the time of his plea, his choice to plead guilty was actually

the product of a threat, any improper promise or misrepresentation, or any other conduct by

counsel that should be considered so coercive as to render the plea invalid.  Under the

circumstances, the trial court was entitled to rely on Petitioner's contemporaneous statement –

when the plea was entered – that Petitioner had not been forced to enter the plea.  At this point,

as well, Petitioner's "subsequent presentation of conclusory allegations unsupported by specifics

is subject to summary dismissal, as are contentions that in the face of the record are wholly

incredible."  *Blackledge*, 431 U.S. at 74.

## C.     Sufficiency of Record

Petitioner's final contention is that his plea should be held invalid because, in his view,

there was an insufficient evidentiary basis for his guilt.  (*See* Am. Pet., ¶ 13.)  For a guilty plea to

withstand scrutiny under *Alford*, there must be a "strong factual basis for the plea."  *Alford*, 400

U.S. at 37; *see also id.* at 37-38 ("When [the defendant's] plea is viewed in light of the evidence

against him, which substantially negated his claim of innocence and which further provided a

means by which the judge could test whether the plea was being intelligently entered . . . its

validity cannot be seriously questioned.").  Accordingly, when a defendant steadfastly maintains

his innocence during the course of a plea, a trial court must adduce facts supporting guilt.  *See id.*

at 37-38.  Establishing a factual basis for actual guilt does not obligate the judge to question the

defendant who refuses to admit guilt, if the judge has acquired knowledge of the facts from other

sources.  *See Willbright v. Smith*, 745 F.2d 779, 780–81 (2d Cir.1984).

Here, the case against Petitioner, as described by the prosecution, was based on, *inter*

*alia*, R.R.'s description of Petitioner's assault, tapes of the 911 call made immediately following

20

that assault, R.R.'s description of Petitioner's apartment, and a report by another witness regarding Petitioner's unlicensed medical practices. (*See* Plea Tr., at 2-6.)  After two searches of Petitioner's apartment, police were also reportedly able to recover physical evidence, including surgical tools, an examination table, and a syringe containing traces of human DNA.  (*See id.*) The prosecution also informed the trial court that Petitioner had purchased a newspaper advertisement, by which he offered various medical services, including abortions.  (*See id.*, at 5.) This evidence, taken together, provided the trial court with a "strong factual basis" for Petitioner's guilt.  *See Alford*, 400 U.S. at 37.

Petitioner, however, contends that the entire case against him rested on false reports and evidence that were fabricated by neighbors, witnesses, and the police.  (*See* Am. Pet., ¶ 13; Pet. Aff., at 2.)  In particular, Petitioner alleges that, in retaliation for a dispute arising from payment of fees for cleaning services, R.R. falsely accused him of crimes and provided the police with false evidence in the form of homeopathy notices from Petitioner's neighbors.  (*See* Am. Pet., ¶ 13; Pet. Aff., at 2.)  According to Petitioner, the second witness, who alerted police to Petitioner's unlawful practice of medicine, was R.R.'s relative and also filed a false report against Petitioner.  (*See* Pet. Aff., at 2.)  Petitioner further contends that there were no patients, prescription medication, or examining table in his apartment, and that statements to the contrary were also false.  (*See* Am. Pet., ¶ 13; Pet. Aff., at 2, 3.)  These conclusory allegations, unsupported by any evidence, are insufficient to rebut the evidence described by the prosecution, all of which strongly indicates that Petitioner was guilty of the charged crimes.

Overall, in light of the record and the paucity of Petitioner's showing in this habeas proceeding, this Court perceives no basis, under AEDPA, to disturb the state court's finding that Petitioner's plea was properly accepted, as "the product of a voluntary rational choice."  (9/15/09

Decision, at 3.)  Petitioner has not presented clear and convincing evidence to rebut the presumed correctness of the state court's underlying factual findings regarding the knowing and voluntary nature of his plea, *see* 28 U.S.C. § 2254(e); *see also Rashid*, 2000 WL 1855114, at *16; *Snyder v. Graham*, No. 09 Civ. 10307 (RJS) (KNF), 2012 WL 983536, at *4 (S.D.N.Y. Mar. 12, 2012) (noting the deference accorded to state court's factual findings under AEDPA and finding that petitioner's arguments to overturn his plea were "not, in the face of the record developed by the trial court, sufficient to rebut the trial court's finding that his plea was knowing and voluntary"); *Vanguilder v. Larry Sears*, No. 9:07-CV-0004, 2008 WL 2326293, at *2 (N.D.N.Y. June 5, 2008) (holding that "[i]n evaluating a claim alleging that a plea was not knowing, voluntary, and intelligent . . . a court must also defer to the factual determinations of the [state] trial court and presume that the facts from the record are correct").  Nor has Petitioner demonstrated that the state court's rejection of his challenge to his plea was either "contrary to" established Supreme Court law, as set forth in *Alford*, or constituted an "unreasonable application" of that law, or was based on an "unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)(2).  Accordingly, under AEDPA, this Court should defer to the state court's denial of Petitioner's claim and dismiss the Amended Petition.

## CONCLUSION

For all of the foregoing reasons, I recommend that the Petitioner's Amended Petition for a writ of habeas corpus be DISMISSED in its entirety.  Further, I recommend that the Court decline to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Petitioner has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Paul G. Gardephe, United States Courthouse, 500 Pearl Street, Room 902, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Gardephe. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

If Petitioner does not have access to cases cited herein that are reported only on Westlaw, he may request copies from Respondents' counsel. *See* Local Civ. R. 7.2 ("Upon request, counsel shall provide the *pro se* litigant with copies of [cases and other authorities cited therein that are unpublished or reported exclusively on computerized databases] as are cited in a decision of the Court and were not previously cited by any party.").

Dated:  New York, New York
      June 25, 2012

               SO ORDERED

               DEBRA FREEMAN
               United States Magistrate Judge

Copies to:

Hon. Paul G. Gardephe, U.S.D.J.

Mr. Narayanan Appukkutta
1 Schwartz Building
1 Wards Island
New York, NY 10035

Alyson Gill, Esq.
Assistant Attorney General
120 Broadway
New York, New York 10271