UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NARAYANAN APPUKKUTTA

              Petitioner,

    - against -

M. RUSSELL, Parole Officer

              Respondent.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/2/13
```

**ORDER**

09 Civ. 6822 (PGG) (DF)

PAUL G. GARDEPHE, U.S.D.J.:

        On August 3, 2009, Narayanan Appukkutta filed a pro se petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1)  In an order dated July 13, 2010, this

Court referred the petition to Magistrate Judge Debra Freeman for a Report and

Recommendation ("R&R"). (Dkt. No. 14)  On June 25, 2012, Judge Freeman issued a 24-page

R&R recommending that this Court dismiss Appukkutta's petition in its entirety. (Dkt. No. 27)

On July 2, 2012, Appukkutta filed an objection to the R&R. (Dkt. No. 30)  He has also

submitted several requests for the Court to appoint pro bono counsel to represent him. (Dkt.

Nos. 31-34)  For the reasons stated below, this Court hereby adopts the R&R of Magistrate Judge

Freeman and denies Appukkutta's petition and requests for pro bono counsel.

**BACKGROUND**

**I.    FACTUAL BACKGROUND**

        On May 31, 2002, a woman – referred to as "R.R." for privacy reasons – went to

Appukkutta's apartment, located on the Upper West Side of Manhattan. (R&R at 2 (citing Plea

Tr. at 3))  Appukkutta told R.R. that he needed someone to clean the apartment, which was set up

like a doctor's office with a waiting area, surgical tools, pill bottles, and other medical

equipment.  (R&R at 2 (citing Plea Tr. at 3-4))  After R.R. cleaned the apartment, Appukkutta

grabbed her breasts from behind.  (R&R at 2 (citing Plea Tr. at 4))  While struggling to free

herself, R.R. heard Appukkutta unzip his pants and say that "he wanted to put it inside her."

(R&R at 2 (citing Plea Tr. at 4))  R.R. managed to break free from Appukkutta's grip and leave

the apartment.  (R&R at 2 (citing Plea Tr. at 4))  She immediately called the police from a public

telephone.  (R&R at 2 (citing Plea Tr. at 4))  R.R. also called her mother, who called 911 and

reported that a man had tried to rape her daughter.  (R&R at 2 (citing Plea Tr. at 4))

       The police executed a search warrant at Appukkutta's apartment.  Officers found

that it was furnished as if it were a doctor's office, with surgical tools and equipment.  (R&R at 3

(citing Plea Tr. at 4))  Appukkutta does not have a license to practice medicine.  (R&R at 3

(citing Plea Tr. at 4))

       On June 2, 2002, Appukkutta was arrested  and charged with Attempted Rape in

the First Degree in violation of N.Y. Penal Law §§ 110.0 and 130.35[1], Sexual Abuse in the

First Degree in violation of N.Y. Penal Law § 130.65[1], and Unauthorized Practice of a

Profession in violation of N.Y. Education Law § 6512[1].  (See R&R at 3 (citing Pet. App. Mem.

1))

       In October 2002, while Appukkutta was released on bail, a second woman

reported that she had gone to Appukkutta's apartment for the purpose of seeking employment

with a doctor.  (R&R at 3 (citing Plea Tr. at 5))  Appukkutta, who was wearing a lab coat, told

the woman that he preformed illegal abortions.  (R&R at 3 (citing Plea Tr. at 5))  The woman

observed two women in the waiting area, one of whom appeared to be pregnant.  (R&R at 3

(citing Plea Tr. at 5))  The woman left the apartment and called the police.  (R&R at 3 (citing

Plea Tr. at 5))  On October 20, 2002, Appukkutta was arrested again and charged with a second

count of Unauthorized Practice of a Profession in violation of N.Y. Education Law § 6512[1].
(See R&R at 3 (citing Resp. Mem. 3))

## II.   PROCEDURAL BACKGROUND

### A.   Finding of Fitness to Stand Trial

After his arrest in 2002, Appukkutta was found unfit to stand trial and was
admitted to the Kirby Psychiatric Center.  He remained there for nearly five years.  On October
3, 2007, Petitioner was discharged after he was found fit to stand trial and assist in his own
defense.  (R&R at 2-4 (citing Pet. App. Mem. 2-3))

### B.   Guilty Plea and Sentence

On October 4, 2007, Appukkutta appeared with counsel before Justice Gregory
Carro of the Supreme Court of the State of New York, New York County.  (R&R at 4 (citing
Plea Tr.))  Justice Carro first confirmed that Appukkutta had been found fit to stand trial.  (R&R
at 4 (citing Plea Tr. at 2))  Appukkutta's counsel then indicated that Appukkutta wished to plead
guilty to one count of Attempted Rape in the First Degree and one count of Unauthorized
Practice of a Profession.  (R&R at 4 (citing Plea Tr. at 3))

Justice Carro asked the prosecutor to describe the evidence the People intended to
present at trial.  (R&R at 4 (citing Plea Tr. at 3))  The prosecutor laid out the facts recited above.
(See R&R at 4; Plea Tr. at 3-6)  At the conclusion of the prosecutor's description, Appukkutta
spoke up, saying, "excuse me, there were no patients."  Pettitioner's lawyer instructed him not to
make any further comments.  (See R&R at 4 (citing Plea Tr. at 6))

Appukkatta's counsel then stated that he had received police reports, 911 tapes,
and videotapes from the prosecution, and that he had discussed with his client that the evidence
would "serve the strength of the People's case."  (R&R at 4-5 (quoting Plea Tr. at 7))

Petitioner's counsel explained that he was commenting on the strength of the evidence "because . . . there is an agreement here that the plea will be entered under the so-called Alford or Serrano plea agreement."[1]  (R&R at 5 (quoting Plea Tr. at 7))  Petitioner's counsel also stated that, after "numerous discussions," Petitioner had steadfastly maintained that "(a) there were no patients, and (b) he never sexually or attempted sexually to assault anyone," even though these contentions "[were] in clear contradiction of what the evidence shows."  (R&R at 5 (quoting Plea Tr. at 7))  Petitioner's counsel noted that, although Petitioner was fit to stand trial, he had spent years at Kirby, and, in counsel's view, "it [was] reasonably inferable that [Petitioner's] denials [were] directly related to [Petitioner's] mental condition."  (R&R at 5 (quoting Plea Tr. at 7))

Justice Carro asked Appukkutta a series of questions "to make sure [he] underst[oo]d the proceedings."  (See R&R at 5 (quoting Plea Tr. at 9))  Appukkutta confirmed that he understood that (1) he faced a sentence of fifteen years' imprisonment if convicted at trial; (2) that if he pleaded guilty, there would be no trial; (3) that if he pleaded guilty, the recommended sentence was five years' imprisonment, which was approximately the amount of time he had already served; and (4) he would be subject to a term of three years' supervised release and would be required to register as a sex offender.  (R&R at 5; Plea Tr. at 9-11)  Justice Carro further confirmed that no one had forced Appukkutta to plead guilty or to enter into the plea agreement, and that no other promises had been made to him.  (R&R at 5; Plea Tr. at 9-11)  Finally, Appukkutta signed a waiver of his right to appeal, after Justice Carro confirmed that Appukkutta had discussed the waiver with his attorney and was willing to sign it.  (R&R at 5; Plea Tr. at 11-12)

---

[1]  In entering an Alford or Serrano plea, a defendant pleads guilty without admitting the underlying facts.  See Alford, 400 U.S. 25 (1970); People v. Serrano, 15 N.Y.2d 304 (1965).

4

Justice Carro then asked Appukkutta: "Do you now withdraw your previously entered pleas of not guilty, and now plead guilty to count one, Attempted Rape in the First Degree . . . and count two, Unauthorized Practice of a Profession . . . [?]  [A]re those your pleas?"  (Plea Tr. at 12)  Appukkutta responded:  "Yes, sir."  (Plea Tr. at 12)

On October 19, 2007, Justice Carro sentenced Appukkutta to five years' imprisonment and three years of supervised release.  (R&R at 6 (citing Sentencing Tr. at 4))

### C.    **Direct Appeal**

Appukkutta, represented by new counsel, appealed his sentence to the Appellate Division, First Department.  (See R&R at 6; Gill Decl. Ex. C)  Appukkutta argued that (1) his plea should be vacated because the court did not inform him of his obligation to pay a mandatory surcharge and crime victim assistance fee, and (2) his three-year period of post-release supervision was excessive.  (R&R at 6-7 (citing Pet. App. Mem. at 7-11))  On April 28, 2009, the Appellate Division unanimously affirmed Petitioner's conviction and sentence, without opinion.  (R&R at 8 (citing People v. Appukkutta, 878 N.Y.S.2d 926 (1st Dep't 2009))

In a May 1, 2009 letter, Petitioner sought leave to appeal to the New York Court of Appeals on the same grounds.  (R&R at 7 (citing Gill Decl. Ex. F (Letter from Robert S. Dean, Esq. to Hon. Jonathan Lippman (May 1, 2009)))  On June 23, 2009, the Court of Appeals denied Petitioner's application. (R&R at 7 (citing Gill Decl. at Ex. G (Certificate Denying Leave, dated June 23, 2009)))

### D.    **Collateral Motion to Vacate Sentence**

On June 11, 2009, Petitioner filed a pro se collateral motion before the trial court, seeking an order vacating his plea pursuant to Section 440.10(1)(h) of the New York Criminal Procedure Law.  Petitioner argued that he was innocent and that he should be permitted to

withdraw his guilty plea because (1) it "was not voluntarily [and] not knowingly" made, (2) his

attorney "misadvised" him, and (3) and "the judge forced [him] to sign" it. (R&R at 7 (citing

Gill Decl. Ex. H (Affidavit [of Petitioner in Support of Article 440 Post Judgment Motion], dated

June 11, 2009)))

On September 15, 2009, the trial court denied Petitioner's motion. (R&R at 8

(citing Gill Decl. Ex. J (Sept. 15, 2009 Decision & Order))) The court found that "[t]he

transcript of the plea proceeding demonstrates that the plea was the product of a voluntary

rational choice: the probability of immediate release from custody was the compelling factor in

[Appukkutta's] decision to plead guilty." (R&R at 8 (citing Gill Decl. Ex. J (Sept. 15, 2009

Decision & Order) at 3)) The court further found that "[t]he plea record also contain[ed] strong

evidence of actual guilt." The court also noted that, in the context of an Alford plea, Appukkutta

was "not required to admit his guilt," and that "[p]rotestations of innocence do not preclude a

court from accepting an Alford plea." (R&R at 8 (citing Gill Decl. Ex. J (Sept. 15, 2009

Decision & Order at 4-5)))

The court further found that "the minutes of the plea proceedings show that the

court recited the rights [Appukkutta] was forfeiting by pleading guilty," and that the court had

ensured that he understood the proceedings. (R&R at 8 (citing Gill Decl. Ex. J (Sept. 15, 2009

Decision & Order at 5))) Finally, the court concluded that Appukkutta's claims that his counsel

"provided misadvice is conclusively refuted by the record of the plea proceeding and by other

official court records." (R&R at 8 (citing Gill Decl. Ex. J (Sept. 15, 2009 Decision & Order at

3)))

On October 8, 2009, Appukkutta filed a pro se motion for leave to appeal the trial

court's denial of his Section 440.10 motion. (R&R at 8 (citing Gill Decl. Ex. K (Motion to

appeal denial of section 440 motion, dated Oct. 8, 2009)))  The First Department denied his

application on November 23, 2009.  (R&R at 8 (citing Gill Decl. Ex. M (Certificate Denying

Leave, dated Nov. 23, 2009))  Petitioner then sought leave to appeal to the Court of Appeals, but

that application was dismissed on the ground that the order sought to be appealed was not

appealable.  (R&R at 8 (citing Gill Decl. Ex. O (Certificate Dismissing Application, dated Jan.

10, 2010)))

### E.     Habeas Corpus Petition

On August 8, 2009, Appukkutta, proceeding pro se, filed the instant petition for a

writ of habeas corpus, naming the "New York State Supreme Court" and "People of the State of

New York" as respondents.  (Dkt. No. 2)  On November 11, 2009, Appukkutta filed an Amended

Petition substituting "Mr. M. Russell, parole officer" as the respondent.  (Dkt. No. 5)  In support

of his Amended Petition, Appukkutta filed an affidavit recounting his version of the events

leading up to his arrest and guilty plea.  (May 5, 2010 Pet. Aff. (Dkt. No. 12))  In his

submissions, Appukkutta asserts that he is innocent, that R.R. and the second woman filed false

reports, and that he practiced "homeopathy" but did not practice medicine.  (See R&R at 9-10;

see generally May 5, 2010 Pet. Aff.)  Appukkutta further contends that his "legal aid lawyer did

not represent any of [his] truth before the court" and that he "did not understand what the judge

told [him]" and "did not wish [to enter] the [A]lford plea."  (See R&R at 10-11; May 5, 2010 Pet.

Aff. at 3-4)

On April 19, 2010, Respondent filed a memorandum of law and declaration in

opposition to the petition.  (Dkt. Nos. 10, 11)  Respondent argues that Appukkutta's plea is valid

because he voluntarily and knowingly agreed to the plea bargain, and because sufficient evidence

exists to support his conviction.  (R&R at 11 (citing Resp. Mem. at 14-18))

In a July 13, 2010 order, this Court referred the petition to Magistrate Judge Debra Freeman for an R&R.  (Dkt. No. 14)  On June 25, 2012, Judge Freeman issued a 24-page R&R recommending that this Court deny the petition in its entirety.  (Dkt. No. 27)  On July 2, 2012, Appukkutta filed an Affirmation in Opposition to the R&R, stating: "I had filed to appoint a Pro Bono Lawyer, but my Petition was denied on 6.25.2012.  I am living in Ward's Island men[s] shelter.  I have no [j]ob and no income to appoint a lawyer to represent my truth."  (Dkt. No. 30)

## DISCUSSION

### I.    STANDARD OF REVIEW

In evaluating a Magistrate Judge's R&R, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Where a timely objection has been made to the Magistrate Judge's recommendations, "[the district court judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  "'[T]o the extent . . . that the [objecting] party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error.'"  DiPilato v. 7–Eleven, Inc., 662 F. Supp. 2d 333, 339 (S.D.N.Y. 2009) (quoting IndyMac Bank, FSB v. Nat'l Settlement Agency, Inc., No. 07 Civ.6865 (LTS) (GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008)).  Although "[t]he objections of parties appearing pro se are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest,'" nevertheless "even a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the [M]agistrate's proposal, such that

no party be allowed a second bite at the apple by simply relitigating a prior argument." Id. at 340 (citations omitted).

A federal court may grant a writ of habeas corpus only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . ." or "that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## II.   ANALYSIS

### A.   The R&R Is Not Clearly Erroneous

Here, Appukkutta's objection lacks specificity. Although his objection is styled as an "Affirmation in Opposition to Report and Recommendation" (Dkt. No. 30), Appukkutta appears to object only to Judge Freeman's June 25, 2012 order denying his application for pro bono counsel. (Dkt. No. 28)  Because Appukkutta's objections lack specificity and are not directed at any findings or fact or conclusions of law in the R&R, Judge Freeman's R&R will be reviewed for clear error. See Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241(RMB)(FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) ("'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'") (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)).

In his petition, Appukkutta contends that (1) his conviction is invalid because he is innocent and there is insufficient evidence to support his conviction; and (2) his guilty plea was not made knowingly and voluntarily.

With regard to the first issue, Judge Freeman correctly applied the standard set forth by the Supreme Court in North Carolina v. Alford, 400 U.S. 25 (1970). (See R&R at 15, 20-22) In Alford, the Supreme Court made clear that "[a]n accused may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even though he is unwilling to admit participation in the crime, or even if his guilty plea contains a protestation of innocence, when . . . he intelligently concludes that his interests require a guilty plea and the record strongly evidences guilt." Alford, 400 U.S. at 25-26.

Here, it is reasonable to conclude that Appukkutta accepted the plea deal in order to obtain a reduced sentence. He faced fifteen years' imprisonment if convicted at trial, but was offered a five year sentence – in effect, time-served – in exchange for his plea. (See R&R at 5, 17) Indeed, in denying Appukkutta's collateral appeal, the trial court found that "[t]he transcript of the plea proceeding demonstrates that the plea was the product of a voluntary rational choice: the probability of immediate release from custody was the compelling factor in the [Appukkutta's] decision to plead guilty." (R&R at 8 (citing Gill Decl. Ex. J (Sept. 15, 2009 Decision & Order) at 3))

Furthermore, as Judge Freeman found, the evidence against Appukkutta – as set forth at the plea hearing – provided a "strong factual basis" for Appukkutta's guilt. (R&R at 20-21) That evidence included R.R.'s description of the assault, the tape of the 911 call after the assault, R.R.'s description of Petitioner's apartment, the information provided by the second complaining witness, and physical evidence recovered from searches of Appukkutta's apartment, including surgical tools, an examination table, and a syringe containing human DNA. The prosecutor also informed the court that Petitioner had placed a newspaper advertisement in which he offered medical services, including abortions. (R&R at 20-21) in light of this record,

Judge Freeman found that Appukkutta's conclusory allegations that the evidence against him was fabricated were insufficient. (R&R at 21)  Given the compelling evidence against Appukkutta, and his lawyer's acknowledgement of the strength of the People's case (R&R at 4-5 (citing Plea Tr. at 7)), Judge Freeman's determination that there was a "strong factual basis" for Appukkutta's guilty plea is not clearly erroneous.

With regard to Appukkutta's second assertion – that his guilty plea was not made knowingly and voluntarily – Judge Freeman again applied the correct legal standard.  Judge Freeman noted that the validity of a guilty plea turns on whether the defendant was competent, was able to consult with an attorney, was aware of the charges against him and of his rights, and was aware of the consequences of pleading guilty. (R&R at 14, 16, 18-19 (citing, inter alia, Brady v. United States, 397 U.S. 742, 755-56 (1970); Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir. 1986))

As Judge Freeman found, Justice Carro confirmed that Appukkutta had been found fit to stand trial and, following the prosecutor's description of the evidence, carefully advised Appukkutta of his rights and the consequences of pleading guilty. (R&R at 17 (citing Plea Tr.))  Justice Carro also confirmed that Appukkutta had not been forced to plead guilty. (R&R at 19 (citing Plea Tr. at 11))  Appukkutta responded to each of Justice Carro's questions, stating that he understood the proceedings and wished to plead guilty. (Plea Tr. at 9-12) Appukkatta's attorney also stated on the record that he had consulted with Appukkutta prior to the plea hearing. (See Plea Tr. at 7)  Such "representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as [the] findings made by the judge accepting the plea, constitute a formidable barrier" that cannot be overcome by the "conclusory allegations unsupported by specifics" now put forth by Appukkutta. Blackledge v. Allison, 431 U.S. 63, 73-

74 (1977). (R&R at 17-20)  Accordingly, Judge Freeman's determination that Appukkutta's

guilty plea was made knowingly and voluntarily is not clearly erroneous.

      In sum, this Court agrees with Judge Freeman's determination that Appukkutta

has not shown that the state court's adjudication of his case was "contrary to" or constituted an

"unreasonable application of" federal law, or that it was "based on an unreasonable

determination of the facts."  (R&R at 22 (citing 28 U.S.C. § 2254(d)).

     **B.**    **<u>Appukkutta's Requests for Pro Bono Counsel Were Properly Denied</u>**

      As noted above, Appukkutta does not object to the findings set forth in the R&R,

but instead objects to Judge Freeman's denial of his request for <u>pro bono</u> counsel.

      In determining whether to grant an application for counsel, the Court must

consider "the merits of [the petitioner's] case, the [petitioner's] ability to pay for private counsel,

his efforts to obtain a lawyer, the availability of counsel, and the [petitioner's] ability to gather

the facts and deal with the issues if unassisted by counsel." <u>Cooper v. A. Sargenti Co., Inc.</u>, 877

F.2d 170, 172 (2d Cir. 1989) (<u>per curiam</u>).  As a threshold matter, in order to qualify for

appointment of counsel, plaintiff must demonstrate that his claim has substance or a likelihood of

success.  <u>See</u> <u>Hodge v. Police Officers</u>, 802 F.2d 58, 60-61 (2d Cir. 1986).

      Prior to filing his objection, Appukkutta made five separate requests for <u>pro bono</u>

counsel. (Dkt. Nos. 3, 6, 15, 17, 25)  Each request was denied because Appukkutta had not made

the requisite "threshold showing of merit." <u>Hendricks v. Coughlin</u>, 114 F.3d 390, 394 (2d Cir.

1997). (Dkt. Nos. 4, 7, 16, 21, 28)[2]

---

[2] Judge Chin, to whom this case was initially assigned, denied Appukkutta's first two requests
for <u>pro bono</u> counsel. (Dkt. Nos. 4, 7)  Magistrate Judge Freeman denied Appukkutta's
subsequent requests, which were made after this case was reassigned to this Court and referred to
Judge Freeman. (Dkt. Nos. 16, 21, 28)

Since filing his objection, Appukkutta has filed four additional requests for <u>pro</u> <u>bono</u> counsel. (Dkt. Nos. 31-34)  Applying the factors set forth in <u>Cooper</u>, these requests will likewise be denied.  As stated above, this Court agrees with Judge Freeman's determination that Petitioner's claim has no merit.  Because Appukkutta has not demonstrated that his claim has sufficient substance or any likelihood of success, Judge Freeman's denial of his requests for <u>pro</u> <u>bono</u> counsel will be affirmed, and Appukkutta's subsequent requests for <u>pro</u> <u>bono</u> counsel will be denied.

## CONCLUSION

For the reasons stated above, the Court adopts the findings and conclusions set forth in Magistrate Judge Freeman's Report and Recommendation in their entirety.  Accordingly, Appukkutta's petition for a writ of habeas corpus is denied.

Magistrate Judge Freeman's orders denying Appukkutta's requests for <u>pro</u> <u>bono</u> counsel are affirmed, and Appukkutta's subsequent requests for <u>pro</u> <u>bono</u> counsel are denied.

This Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(1)(A), because Appukkutta has not "made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Clerk of the Court is directed to terminate the petition and motions (Dkt. Nos. 2, 31, 32) and to close this case.  The Clerk of the Court is further directed to mail a copy of this

order via certified mail to <u>pro se</u> Petitioner Narayanan Appukkutta, 1 Schwartz Building, 1

Wards Island, New York, NY 10035.

Dated: New York, New York
       July 1, 2013

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

14